**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nutrition Distribution LLC, | No. CV-17-01869-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Black Diamond Supplements LLC, et al., | |
| Defendants. | |

Pending before the Court are Defendant Black Diamond Supplements, LLC's and Defendant Supplement Fusion, LLC's (together, "Defendants") Motion to Set Aside Entry of Default (Doc. 17) and Defendants' Motion to Quash Subpoena Duces Tecum ("Motion to Quash," Doc. 18), both filed on December 18, 2017. Plaintiff Nutrition Distribution, LLC ("Plaintiff") filed timely Responses (Doc. 19; Doc. 20) on January 2, 2018. Defendants then filed Replies (Doc. 21; Doc. 22) on January 12, 2018. The Court now rules on the motions.

## I. Background

On June 16, 2017, Plaintiff brought suit against Defendants under the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) alleging that Defendants made misleading advertising claims regarding the safety of Defendants' products containing the ingredient 1,3-dimethlamylamine, methlehexanamine ("DMAA"). (*See* Doc. 1). Defendants were both served on or about June 20, 2017. (Doc. 10; Doc. 11; *see also* Doc. 17 at 3). That same day, Defendants' principal, Brian Gamaly, contacted their DMAA vendor, Hi Tech

Pharmaceuticals ("Hi Tech"), writing: "I know Hi Tech backs the retailers so I wanted to ensure you guys will cover me in this lawsuit or what's the best way to go about it." (Doc. 17 at 3, 11). The next day, an agent of Hi Tech replied: "Anything relating to our products in this suit, consider taken care of." (*Id*. at 3, 11) Defendants maintain that they interpreted this email to mean that Hi Tech would proceed with this case and that Defendants no longer needed to be involved. (*Id*. at 3). Defendants further claim that they received no further documents or correspondence regarding the lawsuit in the following months. (*Id*.)

On August 4, 2017, Plaintiff filed an Application for Entry of Default (Doc. 12) due to Defendants' failure to appear or otherwise respond to the complaint. The Court entered default against Defendants on August 7, 2017. (Doc. 13). On August 31, 2017, the Court granted Plaintiff leave to conduct discovery on the issue of damages. (Doc. 20 at 2). Defendants assert that they first discovered the existence of the judgment against them on November 20, 2017, when JP Morgan Chase Bank notified Defendants that it received a subpoena duces tecum pertaining to the lawsuit. (Doc. 17 at 3). Defendants then hired legal counsel to address this matter. (*Id*. at 4). The date of compliance listed on the subpoena was November 29, 2017. (Doc. 18 at 7). On December 15, 2017, JP Morgan Chase Bank produced Defendants' records as requested in the subpoena. (Doc. 20 at 2). On December 18, 2017, Defendants filed the pending motions in this Court to set aside the default judgment and quash the subpoena duces tecum. (*See id*. (citing Doc. 17; Doc. 18)).

**II.     Motion to Set Aside Default**

    **A.     Legal Standard**

The Court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The Court considers three factors to determine if good cause exists to set aside an entry of default: (1) whether the movant engaged in "culpable" conduct; (2) whether a meritorious defense exists; and (3) whether setting aside the default judgment would prejudice the other party. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d

1085, 1091 (9th Cir. 2010). "The party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). "[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

### 1. Culpable Conduct

Failure to answer may be "culpable conduct" if the defendant acted intentionally. *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1092. The term intentionally, in the context of default judgment, requires that the movant act with bad faith, "such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking or otherwise manipulate the legal process." *Id*. (internal quotation marks and citation omitted); *see also TCI Grp. Life Ins. Plan*, 244 F.3d at 697–98 (9th Cir. 2001) ("Neglectful failure to answer as to which the defendant offers a credible, good faith explanation . . . is not 'intentional' . . . and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.").

Here, the facts do not suggest that Defendants possessed the requisite bad faith necessary for the Court to conclude that they acted culpably by failing to answer the cause of action. After being served by Plaintiff, Defendants relied on their vendor's statement that "[a]nything relating to our products in this suit, consider taken care of." (Doc. 17 at 4). After this discussion, Defendants provide that they did not receive copies of several documents in this case, including the Application for Entry of Default. (*Id*. at 3). On November 20, 2017, when Defendants learned that the lawsuit had not been "taken care of," as promised by the vendor, Defendants promptly hired counsel and addressed the lawsuit. (*Id*. at 4). None of these facts show "an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1091

(reasoning that courts will only find conduct culpable for the purpose of the good cause factors "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond" (internal citation omitted)).

Plaintiff does not dispute these facts, but instead raises a legal argument on this prong. (*See* Doc. 19 at 4). Namely, Plaintiff argues that failing "to file an answer despite receiving actual notice is considered culpable conduct as a matter of law." (Doc. 19 at 4). Plaintiff further argues that a court need not conclude that Defendants acted in bad faith in order to find their conduct culpable. (*Id.*) This argument overstates the rule in the Ninth Circuit. First, whether a defendant was properly served and failed to respond to the complaint is not necessarily dispositive. *See NewGen, LLC*, 840 F.3d at 616 (reasoning that even if a defendant was properly served and ignored the deadline to respond, it may still have a good faith explanation to absolve it of conduct that otherwise appears to be of bad faith).

Plaintiff continues that "if a defendant has received actual or constructive notice of an action and fails to answer, this conduct alone is indicative of culpability." *See, e.g., Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). But, the *Franchise Holding* rule only applies to "legally sophisticated" defendants and should not be applied when the defaulting party was not represented by counsel at the time. *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1093 ("When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality," but when the party "is not a lawyer and [was] unrepresented at the time of the default; accordingly, the proper standard to apply [is] that of *TCI Group*"); *see also Lakeview Cheese Co. v. Nelson-Ricks Creamery Co.*, 296 F.R.D. 649, 653 (D. Idaho 2013) (reasoning that the application of the *Franchise Holding* standard is limited to sophisticated parties).

Here, Defendants were not represented by counsel until after they received notice of their default. (*See* Doc. 17 at 4). Additionally, Defendants email correspondence with

their vendor demonstrates that Defendants lacked the necessary sophistication for the Court to impute intentionality to their failure to respond to Plaintiff's compliant. (*See id.* at 3, 11). As such, the *Franchise Holding* standard does not apply to Defendants under these facts. Moreover, even if *Franchise Holding* did apply, the Court still finds that Defendants offer a "credible, good faith explanation," negating any allegations of a "bad faith intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *New Gen, LLC*, 840 F.3d at 616 (internal quotation marks and citation omitted). Accordingly, the Court finds that this factor weighs in favor of setting aside default.

## 2. Meritorious Defense

To present a meritorious defense, a defendant "must present specific facts that would constitute a defense." *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094. The burden on a defendant, however, is "not extraordinarily heavy." *TCI Grp. Life Ins. Plan*, 244 F.3d at 700. Although general and conclusory assertions do not satisfy this burden, a defendant need only allege sufficient facts to raise "a *potentially* meritorious defense." *See id.* at 699 (emphasis added); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam) (holding that the defendant satisfied this prong because he alleged that the plaintiff repeatedly accepted late rental payments, which "may amount to waiver of the breach and preclude forfeiture of the lease," even though this defense was not fully or certainly established at the early stage of the case). Finally, a court does not determine the truth of a defendant's assertions at this stage, but "need only find that after a trial on the merits, the defense may cause a different result than default." *ThermoLife Intern., LLC v. Sechel Holdings, Inc.*, 2015 WL 1521779 at *2 (D. Ariz. 2015); *see also Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094.

Here, Defendants allege sufficient facts to show that they have a potentially meritorious defense. (*See* Doc. 17). Specifically, Defendants point to evidence synthesized in a brief submitted in *Hi-Tech Pharmaceuticals, Inc.*, a similar case involving their vendor in the Eleventh Circuit. (*See* Doc. 17 at 44, 58–59 (citing *Hi-Tech*

*Pharmaceuticals, Inc. v. United States*, No. 117-13376-K (11th Cir. Nov. 22, 2017))). The thrust of the evidence contained in that brief, the truth of which the Court need not determine here, is that DMAA is not dangerous to users' health as Plaintiff argues. (*See id*. at 44, 58–59). If Defendants prove the truth of these specific facts at trial, Defendants may defeat Plaintiff's false advertising claims and thus, "cause a different result than default." *See ThermoLife*, 2015 WL 1521779 at *2.

Plaintiff does not contest that such facts would cause a different result at trial, but rather argues that Defendants fail to carry their burden because the evidence submitted in the *Hi-Tech* brief is inadmissible. (Doc. 19 at 7). To support this argument, Plaintiff provides that Defendants must produce "competent evidence that establishes a factual or legal basis for the tendered defense." *Tri-Continental Leasing Corp. v. Zimmerman*, 385 F. Supp. 495, 497 (N.D. Cal. 1980) (requiring the party in default to produce competent evidence because the alternative "rule would over emphasize the policy of disposing of cases on the merits at the expense of the counterbalancing considerations of judicial economy and efficiency") (citing *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)). In more recent opinions, however, the Ninth Circuit has adopted a more permissive standard than the one Plaintiff argues for. *See, e.g.*, *Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094 ("All that is necessary to satisfy the 'meritorious defense' requirement is to *allege* sufficient facts that, if true, would constitute a defense" (emphasis added)); *TCI Grp. Life Ins. Plan*, 244 F.3d at 700 (requiring only that the defendant "*present* specific facts that would constitute a defense" (emphasis added)). Plaintiff also objects to the admission of the *Hi-Tech* brief and argues that "[l]egal briefs and the arguments contained therein are not competent evidence." (Doc. 19 at 8).

Here, Plaintiff's arguments fail for two reasons. First, none of the cases cited by Plaintiff support the proposition that *evidence* contained in a legal brief is inadmissible. Rather, these cases simply state that legal "arguments in briefs are not evidence." *See, e.g.*, *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015). Defendants, however, do not rely on the legal arguments in the *Hi-Tech* brief to support their motion. (*See* Doc.

17 at 4–6). Rather, Defendants use the *Hi-Tech* brief to point out the existence of the underlying evidence indicating that DMAA is safe. (Doc. 22 at 7). Plaintiff fails to contest the existence of this underlying evidence in objecting to the form by which Defendants bring it to the Court's attention in this matter. (*See* Doc. 19 at 8).

Second, this Court does not find Plaintiff's argument that Defendants must produce "competent evidence" to set aside default controlling in this context. *Compare Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094, *with Tri-Continental Leasing Corp*, 385 F. Supp. at 497. Rather, the Ninth Circuit provides that a defendant need allege only sufficient facts to raise the possibility of a defense. *Falk*, 739 F.2d at 463; *see also ThermoLife*, 2015 WL 1521779 at *2 (although the plaintiff arguably provided competent evidence to support its efforts to set aside default, the court neither required such evidence nor indicated that its decision was contingent on the defendant having produced such evidence). As Defendants correctly point out, such a high evidentiary requirement would be inconsistent at this early, pre-Answer stage of litigation because a defendant would not even be required to submit admissible evidence in their Answer. (*See* Doc. 22 at 7). Furthermore, the lack of a requirement of admissible evidence at this stage comports with the relatively light burden imposed on a defendant under this prong. *TCI Grp. Life Ins. Plan*, 244 F.3d at 700. Accordingly, the Court finds this factor also weighs in favor of setting aside default.

### 3. Prejudice to Plaintiff

Finally, the Court considers whether setting aside default would prejudice the plaintiff. *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1091. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. If a plaintiff's "ability to pursue his claim will be hindered," then setting aside the judgment will be prejudicial. *Falk*, 739 F.2d at 463. Delay, however, is not cognizable under the prejudice factor. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701.

No evidence in the record suggests that Plaintiff's ability to pursue its claim will

be hindered if the Court sets aside the entry of default.[1] All that will result is a minimal delay, which is not independently prejudicial. *Id.* Accordingly, the final factor also weighs in favor of setting aside default.

### B. Conclusion

Thus, based on these factors, and the general preference for resolving cases on their merits, the Court concludes that the entry of default in this case should be set aside.

## III. Motion to Quash

Defendants also seek to quash the subpoena duces tecum addressed to JP Morgan Chase Bank. (*See* Doc. 18). Defendants argue that the subpoena is unduly burdensome and requires disclosure of trade secrets. (Doc. 18 at 1). In response, Plaintiff argues that Defendants' motion should be denied because it is moot and untimely. (Doc. 20 at 2–4). JP Morgan Chase Bank previously produced Defendants' requested records in accordance with the subpoena on December 15, 2017. (Doc. 20 at 2).

### A. Mootness

It is a longstanding rule that the Court cannot issue "opinions upon moot questions." *Church of Scientology v. United States*, 506 U.S. 9, 12 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). However, if "a court can fashion *some* form of meaningful relief" under the circumstances, the case should not be dismissed as moot. *Id.* (noting that a case is not moot simply because a court cannot return the parties to "*status quo ante*") (emphasis in original). In a case where documents were already delivered, as here, the Court can fashion a form of meaningful relief by ordering the party that obtained the documents to destroy or return them. *See id.*; *SEC v. Inv. Tech., Inc.*, 200 F. App'x 858, 859 (11th Cir. 2006) (per curiam) ("The bank's compliance with the subpoena does not make this case moot . . . we have the power to provide a partial remedy by ordering the SEC to destroy or return all copies of the documents produced by the bank."); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 188 (S.D.N.Y. 2012) (applying the same reasoning). If Defendants prevail on the merits of their

---

[1] Indeed, Plaintiff did not even brief this factor. (*See generally* Doc. 19).

argument, then this Court can fashion such a remedy for them. Accordingly, the Court finds the motion is not moot.

**B.     Timeliness**

The Court must quash or modify a subpoena if it is unduly burdensome or compels disclosure of a privileged or protected matter. Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). It is also true, however, that a motion to quash must be timely filed in order for the Court to consider it. Fed. R. Civ. P. 45(d)(3)(A). The majority of courts, including this Court, read "timely" to mean the date of compliance set in the subpoena. *United States v. Town of Col. City*, 2014 WL 5431218 at *1 (D. Ariz. 2014); *see also Anderson v. Abercrombie & Fitch Stores, Inc.*, 2007 WL 1994059 at *8 (S.D. Cal. 2007); *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006); *United States ex rel. Pogue v. Diabetes Treatment Ctrs of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002).

Here, it is undisputed that Plaintiff served JP Morgan Chase Bank with the subpoena on November 7, 2017. (Doc. 18, Ex. A). Defendants provide that on November 20, 2017, JP Morgan Chase Bank sent them a letter "indicating that it had received a subpoena duces tecum relating to the lawsuit." (Doc. 17, Ex. C, ¶10). The date of compliance listed on the subpoena was November 29, 2017. (Doc. 18, Ex. A). Defendants, however, did not file their motion to quash during the approximately nine-day timeframe from when they became aware of the subpoena through the date of compliance. (*See* Doc. 18). Rather, Defendants waited until December 18, 2017—more than two weeks after the date of compliance and approximately four weeks after first becoming aware of the subpoena—to file the pending motion. (*Id*. at 4).[2] Accordingly, the Court denies Defendant's motion to quash as untimely.

---

[2] Defendants do not provide the Court with a complete explanation for the delay in filing the pending motion or whether they received a copy of the subpoena—which indicates the date of compliance—or simply notice of its existence in the November 20, 2018 correspondence from JP Morgan Chase Bank. (*See* Doc. 17, Ex. C, ¶10; *see also* Doc. 21 at 4). The Court, however, is not inclined to use its discretion to excuse Defendants' lack of diligence in pursuing this information when Defendants were at least made aware of the subpoena approximately nine-days before the date of compliance and chose not to examine it further until the following month.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Set Aside Entry of Default (Doc. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash (Doc. 18) is **DENIED.**

Dated this 1st day of March, 2018.

James A. Teilborg
Senior United States District Judge